[Cite as *State v. Paul*, **2025-Ohio-2088**.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 24CA20 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Skylar M. Paul, | : | **RELEASED 6/10/2025** |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES</u>:

Steven H. Eckstein, Washington Court House, Ohio, for appellant.

Daniel W. Everson, Assistant Washington County Prosecutor, Marietta, Ohio, for appellee.

_____

Hess, J.

{¶1}    Skylar M. Paul appeals a judgment of the Washington County Court of Common Pleas convicting him, following a jury trial, of attempted burglary and theft.  Paul contends that his conviction for attempted burglary lacks sufficient evidence and is against the manifest weight of the evidence because the security camera videotape evidence does not show Paul attempting to force himself through the front door. Paul also contends that his sentence is contrary to law because he was sentenced to a prison term and given a community control sanction. The State concedes the sentencing error.

{¶2}    We find that the videotape segments are incomplete, failed to record the entire incident, and do not capture any of Paul's activities while he is on the porch. Therefore, the video does not contain any evidence that contradicts the homeowners'

testimony that they saw and heard Paul trying to force himself through the front door. We find that his attempted burglary conviction is supported by sufficient evidence and is not against the manifest weight of the evidence, and we overrule his first and second assignments error. We find that the trial court erred in imposing both a prison term and a community control sanction and sustain his third assignment of error. We affirm his conviction but vacate the community control sanction and remand for a new sentencing hearing.

## I. FACTS AND PROCEDURAL HISTORY

{¶3} In August 2024, a Washington County grand jury indicted Paul of one count of burglary in violation of R.C. 2911.12(A)(1), one count of attempted burglary in violation of R.C. 2911.12(A)(1), and one count of theft in violation of R.C. 2913.02(A)(1). Paul pleaded not guilty and the matter proceeded to a jury trial.

{¶4} Marietta Police Department Patrolman Justin McElroy testified that he was dispatched to a home on Fifth Street in Marietta at approximately 4:40 a.m. on June 21, 2024 because a female homeowner called 9-1-1 to report that someone was trying to break into their residence. He arrived at the residence within two minutes and spoke to the male homeowner, who ran up to Patrolman McElroy's cruiser as he arrived. The male homeowner told Patrolman McElroy that someone had been trying to get into their front door and that he believed the intruder had been inside the basement/garage area of the residence. The male homeowner gave Patrolman McElroy a description of the intruder, told him who he thought the intruder was – Skylar Paul, and gave him the direction the intruder travelled after leaving their residence. Patrolman McElroy went to the residence where he believed he would find the intruder and arrived there about ten minutes after he

left the Fifth Street residence. While there Patrolman McElroy apprehended Skyler Paul, whose distinctive tattoos, build, height, shoes, and clothing matched the description of the intruder given by the male homeowner. Law enforcement body camera videos, home security video, photographs of Paul's body and tattoos, photographs of the Fifth Street residence exterior and interior basement/garage area, and recordings of the 9-1-1 call were all introduced into evidence.

{¶5} The male homeowner testified that he was awoken by the loud sound of his garage door slamming, which was directly below his bedroom. Immediately after that, his eight-year-old son came running, crying, and screaming into his bedroom. His son screamed that he heard someone in their garage/basement area yell "open the door, hurry." The male homeowner said his wife woke up and began looking at the security camera on her phone. The male homeowner looked out the window and saw a man coming to the front door of the house. He told his wife to call the cops and to stay with the kids in their bedroom while the male homeowner stood by the front door. The male homeowner saw the doorknob of the front door turning and shaking and the door shaking as the intruder tried to force himself inside. The male homeowner testified that before Paul fled, he stole the male homeowner's backpack off the porch. Video segments from the homeowners' security camera were played for the jury.

{¶6} The male homeowner testified that he knew the intruder was Paul because he went to high school with Paul and had recently found Paul's cellphone in his front yard. The male homeowner did not initially know the cellphone was Paul's, but he tracked down the owner of the cellphone through Facebook, who turned out to be Paul. To return it to

Paul, the male homeowner placed Paul's cellphone in the homeowner's mailbox and saw Paul stop by and get it out of the mailbox.

{¶7}    The male homeowner testified that his garage/basement area was used as an entertainment room and had a bar, pool table, video game consoles, couch, hot tub, and storage for his street bike and his children's electronic dirt bikes. He testified that he keeps the area very well organized, and the bikes are always stored straight up on their kickstands, not laying down on their sides. However, when he took Patrolman McElroy down to the garage/basement room, all the children's bikes were knocked over and laying down on their sides and leaning against the tire of his bike, which was "another red flag, because I don't do that." The male homeowner testified that the loud slamming of the garage door coupled with the disarray of the bikes made him believe that Paul had been inside his garage/basement room.

{¶8}    The female homeowner testified that she and her husband and their three small children live in their home on Fifth Street. The home is a two-bedroom single-family home with a garage/basement underneath. Photographs of the home were introduced into evidence. She was awoken early that morning by her son and husband. Her son was screaming that someone was yelling "open up." Her husband told her to call 9-1-1 because he saw someone outside approaching their front door. The female homeowner started the security camera, which captured images of the intruder, and called 9-1-1. The female homeowner saw and heard someone yanking and turning the knob of the front door and told the 9-1-1 dispatcher that someone was trying to break in the front door.

{¶9}    The jury found Paul not guilty of burglary and guilty of attempted burglary and theft. The trial court sentenced Paul to 30 days in jail for misdemeanor theft of the

backpack and 30 months in prison for attempted burglary, to be served concurrently, and applied the relevant jail time credit. The trial court also ordered Paul not to ingest or be injected with a drug of abuse and to submit to random drug testing.

## II. ASSIGNMENTS OF ERROR

**{¶10}** Paul presents the following assignments of error:

1. The trial court violated the defendant-appellant's rights to due process and a fair trial when it entered a judgment of conviction based on insufficient evidence.

2. The jury verdict of guilty to attempted burglary is against the manifest weight of the evidence.

3. The trial court erred in sentencing the defendant-appellant to imprisonment and a community control sanction.

## III. LEGAL ANALYSIS

### A. Sufficiency and Manifest Weight of the Evidence

**{¶11}** Paul combines his arguments for his first two assignments of error and contends that, under the "physical facts rule," the security camera videotape did not depict Paul shaking, turning, or twisting the front doorknob to attempt to enter the residence. Therefore, even though both homeowners testified that they witnessed and heard the front doorknob turning, shaking, and twisting as Paul attempted to force himself inside the front door, their testimony must be entirely disregarded since it was not supported by security video evidence. Without the homeowners' testimony, Paul argues that the State failed to provide sufficient evidence of attempted burglary because the element of force was not established. Paul does not dispute that he was positively identified by the homeowners, and he does not challenge his theft conviction.

### 1. Standard of Review

**{¶12}** In reviewing the sufficiency of the evidence for a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997), and following *Jackson v. Virginia*, 443 U.S. 307 (1979). "A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Anderson*, 2019-Ohio-395, ¶ 13 (4th Dist.). "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016), quoting *Jackson* at 319.

**{¶13}** In determining whether a conviction is against the manifest weight of the evidence, an appellate court

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. To satisfy this test, the state must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt.
>
> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. However, we are reminded that generally, it is the role of the jury to determine the weight and credibility of evidence. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 2016-Ohio-3338, ¶ 17 (4th Dist.), quoting *State v. West*, 2014-Ohio-1941, ¶ 23 (4th Dist.). We defer to the trier of fact on

these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility.

(Citations omitted.) *State v. Anderson*, 2019-Ohio-395, ¶ 14-15 (4th Dist.).

**{¶14}** " 'Ultimately, a reviewing court should find a trial court's decision is against the manifest weight of the evidence only in the exceptional case where the evidence weighs heavily against the decision.' " *State v. Allen*, 2022-Ohio-1180, ¶ 27 (4th Dist.), quoting *State v. Gillian*, 2018-Ohio-4983, ¶ 28 (4th Dist.); *State v. Lewis*, 2024-Ohio-5490, ¶ 21-22 (4th Dist.).

**{¶15}** Attempted burglary is prohibited under R.C. 2911.12(A)(1) (Burglary) and R.C. 2923.02(A) (Attempt).

The burglary statute reads:

(A) No person, by force, stealth, or deception, shall do any of the following:

(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense; . . . .

The attempt statute reads:

(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

Paul challenges the "force" element of the attempted burglary offense.

**{¶16}** The "physical facts rule" provides that when a witness's testimony " 'is opposed to the laws of nature,' " or " 'is clearly in conflict with principles established by the laws of science,' " then the testimony " 'is of no probative value and a jury is not permitted to rest its verdict thereon.' " *McDonald v. Ford Motor Co.*, 42 Ohio St.2d 8, 12

(1975), quoting *Connor v. Jones*, 59 N.E.2d 577, 581 (Ind. App.1945). In other words, " '[t]he testimony of a witness which is positively contradicted by the physical facts cannot be given probative value by the court.' " *Id.*, quoting *Lovas v. General Motors Corp.*, 212 F.2d 805, 808 (6th Cir. 1954). "[T]he issue is generally whether circumstantial evidence of physical facts is so conclusive as to wholly rebut oral testimony presenting a different version." *Id.* at 13–14; *State v. Russell*, 2022-Ohio-1746, ¶ 33 (4th Dist.).

{¶17} Paul argues that the physical facts rule applies to the two video segments. Because the video from the security camera does not capture images of him beating on the door, twisting the doorknob, or otherwise making an effort to force himself inside, then the testimony of the homeowners that they saw and heard him doing so is entirely lacking in credibility and must be discredited in full. However, we reject this argument because it is clear from the video segments that the video did not capture the entire incident. In fact, none of Paul's actions on the porch are captured, nor is his theft of the backpack. The video cuts out and fails to record any of Paul's actions on the porch, including his grabbing of the backpack, which he concedes he stole.

{¶18} The homeowners explained that they did not have the security cameras turned on, therefore the cameras were not initially recording. However, they both have access to it on their phones. The female homeowner testified that she started the video recording and then made the 9-1-1 call. She believed that the camera "captured most of" the incident. The male homeowner testified that even if the camera is initially turned off, the security camera will begin recording if it is accessed from the phone. Therefore, when his wife started watching from her phone, it began recording. However, when she was calling the police, she was "off of the camera" and later "it clicked back on." Thus, the

male homeowner gave the plausible explanation that while his wife was placing the 9-1-1 call, the video stopped recording for a period, but then "clicked back on" later. During the 9-1-1 call, the wife is asked by the dispatcher what she hears, and she says, "he was beating on our door, he was trying to open it the second time" and "I can't believe he tried to come in the house." Regardless of the reason for the missing video segment, it plainly cuts out and cuts back on later, failing to capture all of Paul's actions.

{¶19} The initial video segment is 44 seconds long. The first 22 seconds shows Paul walking up the front side near the house, turn and walk along the street in front, then turn onto the sidewalk that cuts into the yard up to the front porch and front door. The next 22 seconds shows Paul walking up the sidewalk with a cloth covering his face. A shin tattoo is shown as Paul is wearing shorts. The video stops recording before Paul reaches the front door and when he is about 10 feet away from the front porch. Part of the backpack can be seen sitting on the porch. Because the video stops recording before Paul reaches the front door, it does not capture him on the porch, at the front door, or picking up the backpack. The second video segment is 12 seconds long and starts recording after Paul has left the front porch. It begins when Paul is approximately 10 yards away with his back to the camera walking away. As he turns to his left, the video captures him slinging a backpack over his right shoulder. Therefore, the video only captures incomplete segments of Paul's activities, and it does not capture him walking up onto the porch, any of his actions on the porch or at the front door, him picking up the backpack off the porch, or him turning and walking off the porch. The primary purpose of the video at trial was to identify Paul as the intruder because it shows his distinctive shin tattoo, shorts, shoes, and tall height.

{¶20} Because the video segments are incomplete and omit the time period Paul is on the porch and at the front door, the physical facts rule has no application here. The jury is free to believe the homeowners' testimony. Both homeowners testified that Paul was trying to force his way into the front door, with the wife's excited utterances to the 9-1-1 dispatcher likely being particularly compelling to the jury. After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Therefore, we find that Paul's conviction for attempted burglary was supported by sufficient evidence and overrule his first assignment of error.

{¶21} Additionally, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that, in resolving conflicts in the evidence, the jury did not clearly lose its way and create such a manifest miscarriage of justice that reversal of the conviction is necessary. We overrule Paul's second assignment of error.

### B. Sentencing Error

{¶22} The parties agree that the trial court erred when it sentenced Paul to both a 30-month prison term and a community control sanction when it ordered Paul to refrain from using drugs of abuse and to submit to random drug testing.

{¶23} "Judges have no inherent power to create sentences. Rather, judges are duty-bound to apply sentencing laws as they are written." (Citations omitted.) *State v. Anderson*, 2015-Ohio-2089, ¶ 10. All criminal offenses have been codified and "the only sentence which a trial judge may impose is that provided by statute." *Id.* at ¶ 12. Current felony statutes allow a trial court to impose either a prison term or a community control

sanction, but not both. *Id.* at ¶ 31 ("we hold that as a general rule, when a prison term and community control are possible sentences for a particular felony offense, absent an express exception, the court must impose either a prison term or a community-control sanction or sanctions"). The prohibition against ingesting drugs of abuse and the imposition of random drug testing are examples of community control sanctions under R.C. 2929.15(A)(1). Because the trial court improperly sentenced Paul to a prison term and a community control sanction (i.e., the drug use/random testing order), we sustain the third assignment of error and remand the case to vacate the drug use and testing order. *State v. Nickell*, 2025-Ohio-1232, ¶ 112-115 (4th Dist.).

## IV. CONCLUSION

**{¶24}** We overrule Paul's first and second assignments of error and sustain his third assignment of error. The judgment is affirmed in part, vacated in part, and the cause is remanded to the trial court to conduct a new sentencing hearing.

JUDGMENT AFFIRMED, IN PART, VACATED IN PART, AND MATTER REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED, IN PART, VACATED IN PART, AND MATTER REMANDED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P. J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
          Michael D. Hess, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**