[Cite as *State v. Robison*, 2026-Ohio-1223.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NOS. 25CA12, 25CA13 & 25CA14 |
| Plaintiff-Appellee, | : | |
| v. | : | |
| CARL D. ROBISON, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Steven H. Eckstein, Washington Court House, Ohio, for appellant[1].

Nicole Tipton Coil, Washington County Prosecuting Attorney, and Daniel W. Everson, Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:3-26-26
ABELE, J.

   {¶1}  This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence.  Carl Robison, defendant below and appellant herein, raises two assignments of error for review:

       FIRST ASSIGNMENT OF ERROR:

       "THE JURY'S FINDING THAT THE DEFENDANT-APPELLANT TRAFFICKED IN METHAMPHETAMINE IN COUNT 1 OF 23CR0377 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

_____
[1] Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN SENTENCING THE
DEFENDANT-APPELLANT TO IMPRISONMENT AND A
COMMUNITY CONTROL SANCTION."

**Case No. 23CR377/25CA12**

{¶2} In August 2023, a Washington County Grand Jury returned an indictment that charged appellant with (1) aggravated trafficking in drugs (methamphetamine) in violation of R.C. 2925.03(A)(2)(in an amount exceeding the bulk amount but less than 5 times the bulk amount and in the vicinity of a juvenile), a second-degree felony, (2) aggravated possession of drugs (methamphetamine)(in an amount exceeding the bulk amount but less than 5 times the bulk amount) in violation of R.C. 2925.11(A), a third-degree felony, (3) aggravated possession of drugs (a brown tablet containing methamphetamine) in violation of R.C. 2925.11(A), a fifth-degree felony, (4) aggravated possession of drugs (a green tablet containing methamphetamine) in violation of R.C. 2925.11(A), a fifth-degree felony, (5) aggravated possession of drugs (psilocyn) in violation of R.C. 2925.11(A), a fifth-degree felony, and (6) aggravated possession of drugs (two blue tablets containing amphetamine) in violation of R.C. 2925.11(A), a fifth-degree felony. Appellant entered not guilty pleas.

{¶3} On July 26, 2024, the trial court overruled appellant's motion to suppress evidence and a jury trial commenced on July 31, 2024. Marietta Police Officer Justin McElroy testified that on December 17, 2022, at approximately 10:00 p.m., he observed appellant leave a gas station in a white Mercury SUV with no headlights. McElroy "knew . . . from previous stops . . . that he does not have a valid driver's license," and added that he stopped appellant two months before, driving the same vehicle without a license. McElroy also noticed the vehicle's expired registration sticker. When McElroy conducted a traffic stop, he found appellant driving and two juvenile females in the backseat. Before McElroy spoke to appellant, appellant said, "Hey, McElroy, I still don't have a license."

{¶4} Officer McElroy informed appellant that he stopped him for the headlight and expired registration sticker violations. McElroy also observed a camouflage fanny pack on the front passenger seat and asked if appellant had anything illegal in the vehicle. When appellant replied that he did not, McElroy shone his flashlight directly on the fanny pack and said, "Are you sure?" Appellant looked at the fanny pack, then back at McElroy, and repeated that he did not have anything illegal in the vehicle.

{¶5}  At that point, Officer McElroy called a K-9 to the scene.  About three to four minutes after McElroy initiated the stop, Officer McClelland arrived with the K-9.  McElroy testified that as McClelland spoke to appellant, after "a pretty short conversation," appellant "handed out a bag of presumed marijuana to Officer McClelland."  McClelland gave the marijuana to McElroy, and McElroy and McClelland then decided to conduct a probable cause search.

{¶6}  After Officer McElroy asked appellant to exit the vehicle, he also conducted a weapons pat-down search and "immediately felt a foreign object" in appellant's groin area.  Appellant stated, "Hey, that's my nut."  When McElroy disagreed, appellant said, "It's personal use."  Appellant then told McElroy, "he had a ball" (a gram of narcotics), retrieved the drugs from his pants, and handed a "SpongeBob zipper case" to McElroy:

> Inside the container was a larger baggie of suspected . . . Methamphetamine.  I believe it weighed upwards of ten grams, was my weight on it . . . There were also a few syringes that appeared to be used syringes, and a used glass smoking pipe.  And I believe there was a handful of baggie-like little one-by-one baggies in there.

{¶7}  Officer McElroy then informed appellant that he planned to search the vehicle.  When asked if he had "anything else on him," appellant informed McElroy that he "had something

else inside of his underwear that he was going to retrieve for me." Appellant then retrieved "a one-by-one, it was a small baggie, of suspected – what appeared to be Methamphetamine." Appellant then told McElroy, "I have another little baggie of Meth on me... and he handed that to me as well."

{¶8} Subsequently, Officer McElroy placed appellant in his cruiser and searched appellant's vehicle, where he found, inside the fanny pack:

> a set of digital scales, a small bag containing a certain type of mushroom, I think four or five grams of mushrooms. There were two – these were all separate, there was two pills I believe in a cellophane or some type of plastic wrap, which – what I suspected was Molly or MDMA, but they actually tested positive for Methamphetamine. And there were two other pills separate – they were either separate or in the same bag as the mushrooms, I'm not sure which. They tested positive for Amphetamine, Dextroamphetamine, or something – it was a schedule controlled substance, I believe, that they tested for.

{¶9} Officer McElroy testified that he observed the fanny pack on the passenger's seat, within appellant's arm's reach. Also in the vehicle, McElroy found another set of digital scales, a "large quantity of those one-by-one clear baggies," and "a little over $200." McElroy testified that these types of baggies and digital scales are associated with drug trafficking, and, in his experience, 10 grams is more than a personal-use amount

{¶10} Marietta Police Officer and K-9 handler Glen McClelland testified that on December 17, 2022 dispatch sent him to assist Officer McElroy.  After speaking with McElroy, McClelland approached the vehicle, identified himself to appellant, and explained the canine sniff procedure.  At that time, appellant "said he had marijuana," and handed McClelland a bag which McClelland referred to as a "drop bag."  "Most people will try to hand you something smaller than they've got, to keep you away from finding the bigger stuff."  McClelland asked about narcotics in the vehicle, and appellant said no.  McClelland gave the marijuana to McElroy and then observed McElroy pat appellant down for weapons.  McClelland heard McElroy ask appellant "what was in his crotch," and noted that McElroy found more narcotics.

{¶11} Ohio Bureau of Criminal Investigation Forensic Scientist Erin Miller is an expert in the analysis and identification of controlled substances and works in BCI's drug chemistry section.  Miller's testing revealed (1) Item 1 constituted 9.94 grams of methamphetamine, (2) Item 3 constituted 2.41 grams of Psilocin, (3) Item 4.1 constituted a tablet that contained Methamphetamine, (4) Item 4.2 constituted a tablet that contained Methamphetamine, (5) Item 5 constituted 2 tablets that contained .23 grams and .05 grams of Amphetamine, respectively.

{¶12}  At the close of appellee's case, the trial court overruled appellant's Crim.R. 29 motion for judgment of acquittal.

{¶13} After a two-day trial, a jury found appellant guilty of all counts charged in the indictment.  Due to other pending cases, the trial court continued appellant's sentencing to resolve the other cases and ordered a combined sentence.

**Case No. 23CR400/25CA13**

{¶14} In Case No. 23CR400, while out on bond in Case No. 23CR377, in September 2023, a Washington County Grand Jury returned an indictment that charged appellant with one count of aggravated possession of drugs (methamphetamine in an amount that equals or exceeds the bulk amount but is less than 5 times the bulk amount) in violation of R.C. 2925.11(A), a third-degree felony.  Appellant entered a not guilty plea.

{¶15} At the August 28, 2024 plea hearing, the trial court noted that (1) appellant would plead guilty as charged, (2) no agreed disposition existed, (3) both parties would argue at sentencing, and (4) appellee agreed not to prosecute Tiffany Johnston (appellant's wife) for aggravated possession of drugs. Appellee recited the facts and stated that on December 30, 2022, Marietta Police Officer Glen McClelland stopped appellant for a traffic violation and observed appellant's wife in the passenger seat.  McClelland walked his K-9 around appellant's vehicle, the

dog indicated, and McClelland found drug paraphernalia, marijuana, and miscellaneous items in the vehicle. Officers also found drugs in appellant's wife's work apron, but appellant stated that he placed the drugs in the apron and the drugs belonged to him. BCI identified the drugs as 8.84 grams of methamphetamine.

{¶16} The trial court conducted a Crim.R. 11 colloquy and advised appellant of his rights and the effects of his decision to plead guilty. The court advised appellant of the constitutional rights he waived with his plea, including (1) the right to a jury trial, (2) the right to confront one's accusers, (3) the right to compulsory process to obtain witnesses, (4) the right to require appellee to prove guilt beyond a reasonable doubt, and (5) the privilege against compulsory self-incrimination. The court also advised appellant of the maximum penalties and postrelease control.

{¶17} The trial court ultimately accepted appellant's plea of guilty to one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a third-degree felony. The court continued the sentencing to hold a combined sentencing hearing.

### Case No. 23CR483/25CA14

{¶18} In Case No. 23CR483, while out on bond in Case Nos. 23CR377 and 23CR400, in November 2023 a Washington County Grand Jury returned an indictment that charged appellant with (1) one

count of having weapons under disability (with a forfeiture specification) in violation of R.C. 2923.13(A)(2), a third-degree felony, (2) one count of improperly handling a firearm in a motor vehicle (with a forfeiture specification) in violation of R.C. 2923.16(B), a fourth-degree felony, (3) one count of aggravated trafficking in drugs (methamphetamine) in violation of R.C. 2925.03(A)(2), a second-degree felony (with a R.C. 2941.141(A) firearm specification, a R.C. 2941.1417(A) forfeiture of a gun in a drug case specification, and a R.C. 2941.1417(A) forfeiture of money in a drug case specification), (4) one count of aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A), a second-degree felony, with a R.C. 2941.141(A) firearm specification, (5) one count of trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2), a third-degree felony, with a R.C. 2941.141(A) firearm specification, a R.C. 2941.1417(A) forfeiture of a gun in a drug case specification, and a R.C. 2941.1417(A) forfeiture of money in a drug case specification, and (6) one count of possession of a fentanyl-related compound in violation of R.C. 2925.11(A),a third-degree felony, with a R.C. 2941.141(A) firearm specification.  Appellant entered not guilty pleas.

{¶19} On September 10, 2024, the trial court held a change of plea hearing.  Appellee recited the facts and indicated that

Washington County Deputy Matthew Eichhorn stopped appellant for a traffic violation and asked him to exit his vehicle for a weapons patdown.  The officer found a .22-caliber handgun in appellant's right pocket.  As a convicted felon, appellant is not permitted to possess a firearm.  In the vehicle, officers also found "several one-by-one baggies, sandwich bags, as well as a laundry list of drugs in this instance, along with little containers to traffic drugs, along with scales and $250 in money, U.S. currency."  The narcotics included methamphetamine in 5 times but less than 50 times the bulk amount, and some fentanyl.

{¶20} The trial court advised appellant of the constitutional rights he waived by his plea, including the right to a jury trial, the right to confront and cross-examine witnesses, the right to compulsory process, the right to require the state to prove his guilt beyond a reasonable doubt, and that the state could not compel him to testify against himself.  The court advised him of the maximum possible penalties and postrelease control.  Appellant acknowledged that he understood the nature of the charges, expressed his satisfaction with counsel, and stated that counsel answered his questions, and he understood the ramifications of his plea.

{¶21} At that juncture appellant entered a guilty plea to one count of having weapons under disability with a weapon

forfeiture specification (Count 1), and one count of aggravated trafficking in drugs with a firearm specification and a money forfeiture specification (Count 3).  Appellee dismissed Counts 2, 4, 5, and 6.

### Combined Sentencing

**{¶22}** At a March 5, 2025 sentencing hearing, appellee noted that the second case occurred 13 days after appellant's first case, and the next shortly after that.  Moreover, all combined, in addition to other narcotics, appellant trafficked over 51.5 grams of methamphetamine.  Appellee also referred to appellant's lengthy record, which includes a second-degree felony that occurred in jail while awaiting sentencing, a 2012 underage consumption and failure to appear, a 2018 second-degree burglary probation violation, 2020, 2021, and 2022 theft convictions, and a 2022 criminal trespass.  Appellee pointed out that appellant violated judicial release, had been sentenced to community control, then to prison, and had shown no genuine remorse.  In addition, appellant's incarceration record included several "writeups," including "showing his genitalia in the bathroom," a "hunger strike in the jail," and "using someone else's jail phone."  In addition, an inmate stated that appellant and another inmate "approached him and asked if he would like to purchase Fentanyl."

{¶23} Counsel stated that appellant "has a drug problem.  He does use drugs."  Counsel also argued that the three cases did not involve large drug quantities, and pointed to a purportedly similar case in another court in which a court ordered an eight-year prison term.

{¶24} The trial court stated that it had considered the oral statements, facts of the offenses, appellant's criminal record, including his institutional record, the R.C. 2929.11(A) principles and purposes of sentencing, and the R.C. 2929.12 recidivism factors, then further observed appellant's lengthy criminal history, prior violation of judicial release, refusal of drug and alcohol treatment, failure to show genuine remorse, and appellant's determination to continue to sell narcotics. After consideration, the trial court ordered an aggregate sentence in all three cases, merged Counts 1 and 2 of Case No. 23CR377, and the appellee elected to proceed on Count 1.  The court then sentenced appellant to: (1) serve a minimum 8-year prison term on Count 1 of Case No. 23CR377, concurrent to Counts 3, 4, 5, and 6, and consecutive to Case Nos. 23CR400 and 23CR483, (2) serve a definite 12-month prison term on Count 3 of Case No. 23CR377, concurrent to Counts 1, 4, 5, and 6, and Case Nos. 23CR400 and 23CR483, (3) serve a definite 12-month prison term on Count 4 of Case No. 23CR377, concurrent to Counts 1, 3, 5, and 6 and Case Nos. 23CR400 and 23CR483, (4) serve a definite

12-month prison term on Count 5 of Case No. 23CR377, concurrent to Counts 1, 3, 4, and 6, and Case Nos. 23CR400 and 23CR483, and (5) serve a definite 12-month prison term on Count 6 of Case No. 23CR377, concurrent to Counts 1, 3, 4, and 5, and Case Nos. 23CR400 and 23CR483.  Thus, the court ordered appellant to serve an aggregate minimum 8-year prison term to a maximum 12-year prison term.  Finally, in each sentencing entry, the court added:

> Drug Testing: The Defendant shall not ingest or be injected with a drug of abuse and shall submit to random drug testing and the results of the drug testing shall indicate that the defendant did not ingest or was not injected with a drug of abuse.

{¶25} This appeal followed.

I.

{¶26} In his first assignment of error, appellant asserts that the manifest weight of the evidence does not support appellant's Count 1 trafficking in methamphetamine conviction in Case No. 23CR0377/ 25CA12.  Specifically, appellant contends that "the only evidence of trafficking is the weight of the drugs found.  Yet, there were also syringes and a meth pipe in the same container.  Plus, the drugs were not packaged for sale into one-by-one baggies.  This indicates personal use."

{¶27} Appellee, on the other hand, argues that this argument is built on "the fallacy that if a person is a drug user, he cannot also be a drug trafficker."

{¶28} A reviewing court may conclude that a judgment is against the weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "The question to be answered when a manifest weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.' " *State v. Leonard*, 2004-Ohio-6235, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193–194 (1998), citing *State v. Eley*, 56 Ohio St.2d 169 (1978), syllabus. A court that considers a manifest weight challenge must " 'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.' " *State v. Beasley*, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 328. However, the reviewing court must bear in mind that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67 (2001); *State v. Murphy*, 2008-Ohio-1744, ¶ 31 (4th Dist.). " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' " *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20, quoting *State v. Konya*, 2006-Ohio-6312, ¶ 6 (2d Dist.), quoting *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug. 22, 1997).

**{¶29}** Thus, an appellate court will generally defer to the trier of fact on issues of evidence weight and credibility, as long as a rational basis exists in the record for the fact-finder's determination. *State v. Picklesimer*, 2012-Ohio-1282, ¶ 24 (4th Dist.); *accord State v. Howard*, 2007-Ohio-6331, ¶ 6 (4th Dist.) ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight."). Accordingly, if the prosecution presented substantial, credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *Accord Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990) (a judgment is not against the manifest weight of the evidence when " ' "the greater amount of credible evidence" ' " supports it).

**{¶30}** Consequently, when an appellate court reviews a manifest weight of the evidence claim, the court may reverse a judgment of conviction only if it appears that the fact-finder, when it resolved the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20

Ohio App.3d 172, 175 (1st Dist. 1983); *accord McKelton* at ¶ 328. Finally, a reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Clinton*, 2017-Ohio-9423, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483 (2000).

**{¶31}** In the case sub judice, appellant contends that his aggravated trafficking in drugs conviction is against the manifest weight of the evidence because: (1) the only evidence to support trafficking is the weight of the drugs found, and (2) the facts indicate personal drug use, not trafficking. Appellee, however, argues that: (1) appellant possessed a bulk amount of methamphetamine, and (2) other evidence, including individual baggies and two sets of digital scales, provides indicia of trafficking.

**{¶32}** R.C. 2925.03(A)(2) defines trafficking in methamphetamine:

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog.

**{¶33}** Appellant asserts that the sole evidence of trafficking in Case No. 23CR0377 is the amount of methamphetamine retrieved, 9.94 grams, and the discovery of the

SpongeBob SquarePants glasses case with syringes and a methamphetamine pipe, combined with the fact that the methamphetamine had not been bagged in individual bags for sale indicates personal use, not trafficking.  Appellant further submits that the weight of the drugs, without more, cannot be said to support a conclusion of trafficking.

{¶34} As appellee points out, however, circumstantial evidence has long been used to successfully support drug trafficking convictions.  *State v. Delaney*, 2018-Ohio-727, ¶ 11 (9th Dist.).  Moreover, the amount of methamphetamine is clearly suggestive of trafficking, as possession of a large quantity of narcotics is commonly recognized as significant circumstantial evidence indicative of intent to distribute or traffic in narcotics.  1 Wharton's Criminal Evidence § 3:5 (15th ed.).

{¶35} Further, appellee notes that the fact that appellant claimed that what he possessed constituted "personal use" is evidence of trafficking.  For example, in *State v. Hill,* 2018-Ohio-67 (4th Dist.), Hill argued that the trial court erred when it allowed the jury to consider urinalysis results that showed Hill had ingested illicit drugs.  However, we observed that the record revealed that an officer testified that an accused's drug use is a factor to consider when investigating drug trafficking.  *Id.* at ¶ 19.  In *Hill,* we cited *State v. Dixon*, 2016-Ohio-1491 (4th Dist.) (overruled on other grounds by *State v. Mozingo,*

2016-Ohio-8292) in which this court ultimately found that Dixon's statement regarding his personal drug use "was admissible for purposes of showing knowledge of the existence of the drugs at issue, as well as motive for his involvement in the transportation of drugs."  *Id.* at ¶ 41.  Thus, we found Dixon's personal drug use to be both relevant and admissible as an exception to Evid.R. 404(B), as it demonstrated Dixon's motive and knowledge in the context of drug trafficking.  *Hill* at ¶ 19.

{¶36} In addition to the weight of the narcotics involved, "the convergence of illegal drugs, drug paraphernalia (including baggies), and large sums of cash permit a reasonable inference that a person was preparing drugs for shipment."  *Delaney, supra,* at ¶ 11.  We note that in *State v. Rutledge*, 2013-Ohio-1482, ¶ 15 (6th Dist.), the court observed that numerous courts have determined that items such as plastic baggies, digital scales, and large sums of money are often used in drug trafficking and may constitute circumstantial evidence of conduct proscribed by R.C. 2925.03(A)(2):

> *State v. Garrett*, 12th Dist. No. CA2008-08-076, 2009-Ohio-2806, ¶ 23; *State v. Harry*, 12th Dist. No. CA2008-01-0013, 2008-Ohio-6380, ¶ 50; *State v. Floyd*, 8th Dist. No. 90705, 2008-Ohio-5262, ¶ 16; *State v. Malott*, 12th Dist. Nos. CA2007-02-006, CA2007-02-007, CA2007-02-008, 2008-Ohio-2114, ¶ 20; *State v. Smallwood*, 9th Dist. No. 07CA0063, 2008-Ohio-2107, ¶ 23; *State v. Kutsar*, 8th Dist. No. 89310, 2007-Ohio-6990, ¶ 20; *State v. Fain*, 5th Dist. No. 06CAA120094, 2007-Ohio-4854, ¶ 38; *State v. Fry*, 9th Dist. No. 23211, 2007-Ohio-3240, ¶ 50; *State*

*v. Williams,* 1st Dist. No. C-040747, 2005-Ohio-6772, ¶
19.

*Rutledge* at ¶ 15.

{¶37} Moreover, similar to the case at bar, in *State v.
Kent,* 2022-Ohio-834 (8th Dist.), the court noted that an officer
testified about indicia of drug trafficking:

> At trial, Det. Pollack provided extensive testimony
> regarding his training and experience as a member of the
> vice unit. Relevant to this case, Det. Pollack testified
> that there are differences between a person who merely
> possesses drugs and a person who is engaged in
> trafficking. He explained that a person who uses drugs
> usually carries just enough substance on their person
> for one or two uses, such as "a quarter of a gram to a
> gram" of crack or heroin, or "one or two pills." (Tr.
> 512.) In contrast, a drug trafficker typically carries
> a large amount of cash and anywhere from 5 to 30 grams
> of drugs at a time. Det. Pollack further testified that
> while drug users typically possess small single-use
> packages, drug traffickers "typically carry large
> amounts [of drugs] in a sandwich baggy." (Tr. 513.). If
> the trafficker has more than one drug, "they'll carry
> three or four different sandwich baggies of additional
> drugs to satisfy their multitude of customers." (Tr.
> id.) Det. Pollack further testified that drug
> traffickers "typically have multiple cell phones — one
> personal phone and one drug phone." (Tr. 514.)

> *Id.* at ¶ 50.

{¶38} In addition, in *State v. Birdson,* 2024-Ohio-1744, ¶ 43
(11th Dist.), the Eleventh District further highlighted:

> "[M]ere possession of drugs is insufficient to prove
> trafficking," but constructive possession of drugs that
> have been packaged for sale along with possession of
> other paraphernalia associated with sale is sufficient
> evidence of trafficking. *State v. Carlton*, 9th Dist.
> Lorain No. 12CA010219, 2013-Ohio-2788, ¶ 10, citing
> *State v. Mielke*, 12th Dist. Warren No. CA2012-08-079,

2013-Ohio-1612, ¶ 46. Possession of a large quantity of drugs, large amounts of cash, plastic baggies, and scales, among other indicia of trafficking, provide persuasive circumstantial evidence that tends to prove a violation of R.C. 2925.03(A)(2). *See State v. Floyd*, 7th Dist. Mahoning No. 18 MA 0106, 2019-Ohio-4878, ¶ 32 (plastic baggies, scales with cocaine residue, a large quantity of cash, and a firearm provide circumstantial evidence of trafficking); *State v. Burton*, 8th Dist. Cuyahoga No. 107054, 2019-Ohio-2431, ¶ 48 (in addition to a large quantity of drugs, plastic bags, and digital scales, the presence of "cut mixes," which are often used to prepare drugs for sales, were located which provided sufficient, credible circumstantial evidence of trafficking); *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 39 (large quantities of drugs, $8,322.00 in cash, and various other evidence indicative of drug trafficking such as digital scales and plastic baggies established sufficient, circumstantial evidence of trafficking); *State v. Fain*, 5th Dist. Delaware No. 06CAA120094, 2007-Ohio-4854, ¶ 37-39 (Plastic sandwich bags and digital scales are circumstantial evidence for drug trafficking.); *State v. Fry*, 9th Dist. Summit No. 23211, 2007-Ohio-3240, ¶ 50 (presence of drugs and drug paraphernalia permit a reasonable inference that a person was preparing drugs for shipment).

*Id.* at ¶ 43.

**{¶39}** Appellee highlights *State v. Kennard,* 2024-Ohio-2205 (5th Dist.), in which an officer stopped and removed the defendant from his vehicle. Upon searching the vehicle, officers discovered a digital scale with white powder, along with empty plastic baggies in the passenger compartment near the driver's seat. In the backseat, officers found an open box of sandwich bags and a bag of suspected methamphetamine under the passenger seat. *Id.* ¶ 9. An officer testified that the quantity, presence of the baggies, and presence of the digital

scale led him to believe the appellant was dealing drugs. *Id.* The Fifth District observed that "[p]lastic bags and the digital scale are indicative of drug trafficking as they are used to weigh and package drugs for sale." *Id. See also, State v. Burton*, 2019-Ohio-2431, ¶ 48 (8th Dist.)(plastic bags, digital scales, and large sums of money, when found with a large amount of drugs, are circumstantial evidence of drug trafficking); *Fry*, 2007-Ohio-3240, ¶ 50 (9th Dist.) (presence of drugs and drug paraphernalia permit a reasonable inference that a person is preparing drugs for shipment); *State v. Hall,* 2019-Ohio-4000, ¶ 7 (11th Dist.)(large quantity of drugs and money is indicative of drug sales and trafficking).

{¶40} In the case sub judice, although the drugs had not yet been individually packaged for sale, the container in which Officer McElroy found the drugs held narcotics, a number of small baggies of the kind typically used for drug distribution, and a set of digital scales. In addition, a search of the vehicle revealed another set of digital scales, a large quantity of baggies, and over $200 in cash. At trial, when asked the significance of the "little one-by-one baggies," Officer McElroy testified, "That's what people would use to, most commonly, in my line of work, that's what people would use to sell or you know, sell drugs, transport drugs, things like that, in smaller quantities." "You've got little tiny bags, you just – you can

put it all into little bags, and then you can sell the individual smaller baggies." McElroy continued that "the normal that I find your everyday, what I would consider just your user, would be typically a gram or under." "It was three times what the state would consider to be bulk." Thus, we agree with appellee that personal drug use and drug trafficking are not mutually exclusive.

{¶41} After our review of the record we believe that appellee adduced ample competent credible evidence to show (1) methamphetamine in an amount exceeding the bulk amount, (2) two sets of digital scales, (3) a large quantity of individual baggies, (4) over $200 in cash, and (5) Officer McElroy's testimony that this evidence constitutes indicia of drug trafficking. This evidence provided ample competent, credible evidence to establish, beyond a reasonable doubt, that appellant committed the offense of aggravated drug trafficking. Moreover, we find no evidence that the jury lost its way and committed a manifest miscarriage of justice that warrants reversal of the conviction.

{¶42} Accordingly, we overrule appellant's first assignment of error.

II.

{¶43} In his second assignment of error, appellant asserts that the trial court erred when it sentenced him to both a term

of imprisonment and a community control sanction.  Here, the parties agree that the trial court erred when it sentenced appellant to both a prison term and a community control sanction when it added to each sentencing entry:

> Drug Testing: The Defendant shall not ingest or be injected with a drug of abuse and shall submit to random drug testing and the results of the drug testing shall indicate that the defendant did not ingest or was not injected with a drug of abuse.

**{¶44}** "Judges have no inherent power to create sentences. Rather, judges are duty-bound to apply sentencing laws as they are written." (Citations omitted.)  *State v. Anderson*, 2015-Ohio-2089, ¶ 10.  All criminal offenses have been codified and "the only sentence which a trial judge may impose is that provided by statute."  *Id.* at ¶ 12.  Current felony statutes allow a trial court to impose either a prison term or a community control sanction, but not both.  *Id.* at ¶ 31 ("we hold that as a general rule, when a prison term and community control are possible sentences for a particular felony offense, absent an express exception, the court must impose either a prison term or a community-control sanction or sanctions").  Legal Analysis

**{¶45}** The prohibition against drug use is an example of a community control sanction pursuant to R.C. 2929.15(A)(1).  Recently, in *State v. Paul,* 2025-Ohio-2088 (4th Dist.), the trial court sentenced the defendant to serve a 30-day jail term for misdemeanor theft and a 30-month prison term for attempted

burglary, to be served concurrently, and applied the relevant jail time credit. In addition, the trial court also ordered Paul not to ingest or be injected with a drug of abuse and to submit to random drug testing. *Id.* at ¶ 9. Because the trial court improperly sentenced Paul to a prison term and a community control sanction (i.e., the drug use/random testing order), we remanded the case to vacate the drug use and testing order. *Id.* at ¶23, citing *State v. Nickell*, 2025-Ohio-1232, ¶ 112-115 (4th Dist.). Although the appellee requests that this court simply vacate the community control sanction rather than remand it, in keeping with *Paul* and *Nickell*, we remand this case to the trial court to vacate the community control sanction.

**{¶46}** Therefore, for all the foregoing reasons, we conclude that the trial court erred when it sentenced appellant to serve both a prison sentence and a community control sentence. Consequently, we sustain appellant's second assignment of error and affirm the trial court's judgment in part, reverse in part and remand for resentencing.

> JUDGMENT AFFIRMED IN PART,
> REVERSED IN PART AND REMANDED
> FOR RESENTENCING CONSISTENT
> WITH THIS OPINION.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed in part, reversed in part, and the cause remanded for re-sentencing consistent with this opinion.  Appellee and appellant shall equally divide the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
    Peter B. Abele, Judge


NOTICE TO COUNSEL
Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.